Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9085 | **DATE** | 9/27/2004 |
| **CASE TITLE** | DONNIE RAY FISHER vs. OFFICER RICHARD LOVEJOY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: The Court grants Officer Lovejoy's motion for summary judgment [doc. no. 36-1]. This case is terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 28 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONNIE RAY FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| OFFICER RICHARD LOVEJOY, | ) | 01 C 9085 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this civil rights suit brought pursuant to 42 U.S.C. § 1983, Donnie Ray Fisher ("Fisher") has sued Officer Richard Lovejoy ("Officer Lovejoy") in his individual capacity, alleging that Officer Lovejoy violated his rights as secured by the Due Process Clause of the Fourteenth Amendment when he allegedly failed to protect Fisher, a pre-trial detainee, from harm received when attacked by other inmates in the Cook County Department of Corrections. Presently before the Court is Officer Lovejoy's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated herein, the Court grants his motion.

## FACTS[1]

Fisher is a former detainee of the Cook County Department of Corrections. (Def.'s LR 56.1(a)(3) ¶ 2.) On December 30, 1999, he was housed along with forty-seven other inmates in living unit CJ of Cook County Department of Correction, Division 11. (*Id.* ¶¶ 5-6.) Officer Lovejoy was on watch duty in both the CJ and CF living units

---

[1] Unless otherwise noted, the following facts are undisputed or deemed admitted due to a party's noncompliance with Local Rule 56.1, which this Court strictly enforces.

on that evening, and this "cross-watch" assignment involved walking back and forth between the two units' dayrooms. (*Id.* ¶¶ 7-8.)

At approximately 7:15 p.m. on that day, while in the CJ dayroom, Fisher witnessed another inmate removing food from Fisher's cell. (*Id.* ¶ 9.) He confronted that inmate, at which point a fight broke out between them. (*Id.* ¶¶ 9-10.) After approximately three minutes, another inmate attacked Fisher with his fists, and a crowd of inmates gathered near the fighting inmates, cheering on Fisher's assailants. (*Id.* ¶ 11; Pl.'s LR 56.1(b)(3)(A) ¶ 11.)

Eventually, Fisher was encircled by the crowd of inmates while he fought with or was attacked by two individuals in the center of the circle. (Def.'s LR 56.1(a)(3) ¶ 14; Pl.'s LR 56.1(b)(3)(A) ¶ 14.) He was at some point able to break out of the circle, and he ran toward the dayroom door and saw Officer Lovejoy through the window beyond the door. (Def.'s LR 56.1(a)(3) ¶ 16.) Fisher hit the red button next to the dayroom door, and he claims he called out for help to Officer Lovejoy beyond the door. (*Id.* ¶ 17; Pl.'s LR 56.1(b)(3)(A) ¶ 18.) While Fisher may have intended to get help, the button he pressed does not set off a general alarm and only registers as "intercom calling" on the pod control officer's computer screen. (Def.'s LR 56.1(a)(3) ¶ 19.) After pushing the red button, Fisher turned around to face his assailants, and was struck in the face with a shank, which is a knife fashioned from available materials by an inmate. (*Id.* ¶ 22.) After being stabbed, Fisher was kicked in the head and fell to the ground curled up in a protective position while other inmates continued to kick and punch him. (*Id.* ¶ 23; Pl.'s LR 56.1(b)(3)(A) ¶ 23.)

2

Officer Lovejoy had a clear view of the fight through the window into the CJ dayroom and witnessed inmate Kunta Chatman repeatedly stabbing Fisher with a sharpened instrument. (Pl.'s LR 56.1(b)(3)(B) ¶ 62.) As soon as he saw the altercation, Officer Lovejoy, who was unarmed, called in a "10-10," asking for all available officers to assist him in the CJ unit. (Def.'s LR 56.1(a)(3) ¶¶ 26-27.) The door to the unit had to be unlocked by the pod officer before any guards could enter. (Pl.'s LR 56.1(b)(3)(A) ¶ 29.) Plaintiff argues that according to Sergeant Henry Page, a corrections officer of the rank of Officer Lovejoy would have had the authority to give the order for the pod officer to open the door to the dayroom (Id. ¶ 21.) However, Officer Lovejoy was trained to call for back up assistance when faced with an inmate confrontation that is violent or involves weapons. (Def.'s LR 56.1(a)(3) ¶ 28.)

By the time two officers arrived to assist Officer Lovejoy, Chatman had ceased stabbing Fisher, but inmates were fighting and throwing objects around the dayroom. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 63, 66.) A steady stream of officers followed the first two, and upon Sergeant Page's command, the pod control officer "popped" open the dayroom door to let Officer Lovejoy and his fellow officers (approximately eighteen to twenty in number) into the dayroom. (Def.'s LR 56.1(a)(3) ¶¶ 32-34; Pl.'s LR 56.1(b)(3)(B) ¶¶ 63, 65.) A correctional officer ordered all of the inmates onto the wall, and other officers directed the inmates in complying with this instruction. (Def.'s LR 56.1(a)(3) ¶¶ 37, 39.)

Fisher was still lying on the floor as the officers moved the inmates toward the wall. (Id. ¶ 40.) Fisher claims that Officer Lovejoy ordered him to rise and line up on the wall. (Pl.'s LR 56.1(b)(3)(B) ¶ 67.) When Fisher complained of being injured, Officer Lovejoy allegedly told him it was a "direct order." (Id. ¶ 68.) Officer Lovejoy

3

then pulled Fisher off of the floor and pushed him toward the dayroom wall with the other inmates. (Def.'s LR 56.1(a)(3) ¶ 42; Pl.'s LR 56.1(b)(3)(A) ¶ 42.) Fisher complied, placing himself on the wall in an available space between two other inmates, close enough that their forearms were touching. (Def.'s LR 56.1(a)(3) ¶ 43; Pl.'s LR 56.1(b)(3)(B) ¶ 74.) After the inmates had been ordered to the wall, Officer Lovejoy crossed to the other end of the dayroom with a few other officers, and he noticed as he passed that Fisher had some scratch marks and blood on his back. (Pl.'s LR 56.1(b)(3)(B) ¶ 70; Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 70.) Near the area of the room where Chatman had stabbed Fisher, Officer Lovejoy noticed a makeshift knife on the floor, which Sergeant Page later collected along with other homemade knives. (Pl.'s LR 56.1(b)(3)(B) ¶ 72; Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 72.)

While lined up against the wall, Fisher heard the inmate to his right whisper something to the next man to the right, the words of which he could not make out besides the word "bitch," which caused him to turn in the whisperer's direction. (Def.'s LR 56.1(a)(3) ¶ 45; Pl.'s LR 56.1(b)(3)(B) ¶ 75.) Fisher was unsure if the inmate to his right was one of his original assailants, but he then saw the man remove a knife from his waistband. (Def.'s LR 56.1(a)(3) ¶¶ 47-48.) Fisher spun off the wall in an attempt to avoid being stabbed, yelling as he pushed himself backwards to face his attacker, but the inmate's knife wounded him in the chest. (*Id.* ¶¶ 51-52; Pl.'s LR 56.1(b)(3)(B) ¶ 76.) Fisher was pushed by his attacker against another inmate and fell onto the floor in a protective posture, at which point the attacker stabbed Fisher in the head. (Def.'s LR 56.1(a)(3) ¶ 54; Pl.'s LR 56.1(b)(3)(B) ¶ 77.) At about the same time, the inmate to whom the attacker had been whispering left the wall and started hitting Fisher with his

4

hand. (Pl.'s LR 56.1(b)(3)(B) ¶ 78.) The first attacker stabbed Fisher again, and Fisher felt a "poking" sensation on the middle of his back as he rolled onto his stomach. (Def.'s LR 56.1(a)(3) ¶ 55.) Within two minutes, by Fisher's estimate, four to five officers rushed the inmates attacking Fisher and restrained them. (*Id.* ¶¶ 55-56; Pl.'s LR 56.1(b)(3)(B) ¶ 80.) Fisher is not aware of where Officer Lovejoy was while he was being attacked by the inmates on the wall, but he did see Officer Lovejoy standing by the door of the dayroom as the attackers were restrained. (Def.'s LR 56.1(a)(3) ¶¶ 50, 58.)

## DISCUSSION

Pursuant to Rule 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a genuine issue of fact exists, courts do not weigh evidence or judge the credibility of witnesses. *Id.* at 249. Rather, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *First Bank & Trust v. Firstar Info. Servs., Corp.*, 276 F.3d 317, 322 (7th Cir. 2001). Nonetheless, the nonmoving party may not simply rest on the pleadings in response to a motion for summary judgment, but he must demonstrate through specific factual allegations based on evidentiary materials that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." A plaintiff must establish that: (1) he has been deprived of a federal right by (2) a person acting under color of state law. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "'take reasonable measures to guarantee the safety of the inmates.'"[2] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "While prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury within a prison is an Eighth Amendment violation." *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) (citing *Farmer*, 511 U.S. at 828). "Prison officials have violated an inmate's Eight Amendment rights if there was a risk of injury that objectively was 'sufficiently serious,' and if the officials showed 'deliberate indifference' to that substantial risk." *Id.* (citations omitted).

The determination of whether a prison official acted with deliberate indifference involves an objective and subjective component, *Jackson v. Illinois Medi-Car, Inc.*, 300

---

[2]Because Fisher in this case was a pre-trial detainee at the time of his injuries, his section 1983 claim is analyzed not under the Eighth Amendment but under the Due Process Clause of the Fourteenth Amendment. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). However, the deliberate indifference standard applies with as much force in cases involving pre-trial detainees. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996); *Salazar v. City of Chi.*, 940 F.2d 233, 237-41 (7th Cir. 1991).

6

F.3d 760, 764 (7th Cir. 2002), and it appears that only the subjective component is challenged in this case.[3] To satisfy the subjective prong of the inquiry, "the plaintiff must establish that the relevant official had 'a sufficiently culpable state of mind.'" *Id.* (quoting Farmer, 511 U.S. at 834). Plaintiff must proffer evidence that the prison official was "aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and [that] he . . . also [had] draw[n] the inference." *Farmer*, 511 U.S. at 837. Fisher may demonstrate Officer Lovejoy's knowledge with either (1) direct evidence that Fisher notified Officer Lovejoy of the risk of harm or (2) circumstantial evidence suggesting that the risk was so plainly obvious that Officer Lovejoy must have known of its existence. *See id.* at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

The Court emphasizes that the question is not whether the defendant should have known of the substantial risk, but whether the defendant actually knew of a substantial risk to the plaintiff. *See id.* at 838. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* In other words, "ordinary negligence by prison officials is not enough to show an Eighth Amendment violation." *Washington*, 306 F.3d at 518. Even gross negligence will not be sufficient to establish deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Further, "prison officials who actually knew of a substantial risk to inmate health or

---

[3]Part of Officer Lovejoy's reply purports to address the objective prong, but he only challenges whether he had knowledge of a substantial risk to Fisher, which is part of the subjective prong analysis. (Def.'s Reply Br. at 4-5.)

7

safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Fisher argues that Officer Lovejoy was deliberately indifferent to his safety when: (1) he failed to intervene while Fisher was being stabbed by a fellow inmate; (2) he subsequently ordered Fisher to line up against the wall amongst other hostile fellow inmates; and (3) he failed to intervene as one of the inmates began to stab Fisher after they were lined up against the wall. In response, Officer Lovejoy argues that he did not exhibit deliberate indifference to Fisher's safety. Officer Lovejoy contends that: (1) he responded reasonably to the initial threat to Fisher, *i.e.*, the first fight, by calling for backup; (2) he did not have actual knowledge of any substantial risk to Fisher when he ordered Fisher to the wall; and (3) he did not have actual knowledge of any substantial risk to Fisher regarding the second fight. The Court addresses each of Officer Lovejoy's alleged failures in turn.

## I. The First Fight

Officer Lovejoy first became aware of a risk to Fisher when he observed, through the dayroom window, Kunta Chatman stabbing Fisher repeatedly with other inmates gathered around. (Pl.'s LR 56.1(b)(3)(B) ¶ 62.) Officer Lovejoy was surely aware that Fisher's health and safety were at risk at this moment, and in fact Fisher called for help, but Fisher has not presented any evidence to suggest Officer Lovejoy's response to the situation was unreasonable. Fisher was encircled by an aggressive crowd of inmates, and the dayroom contained as many as forty-seven inmates. (Def.'s LR 56.1(a)(3) ¶¶ 5-6, 14.) Officer Lovejoy was unarmed and unaccompanied, and he called for assistance as

8

soon as he witnessed the fight. (*Id.* ¶¶ 26-27.) Far from exhibiting deliberate indifference to Fisher's predicament, Officer Lovejoy took all measures within his power to assist Fisher. If Officer Lovejoy had simply strode into the dayroom unaccompanied, he would have put his own safety at risk without any reasonable prospect of single-handedly restoring order in the dayroom. Fisher's own version of the facts fails to present any support for the contention that Officer Lovejoy's conduct at this point was unreasonable, much less deliberately indifferent.

## II. Ordering Fisher to the Wall

Once a large group of correction officers had arrived to assist Officer Lovejoy, the door was opened by the pod control officer, and the officers ordered all of the inmates who were present to stand against the wall. (Def.'s LR 56.1(a)(3) ¶¶ 33-37.) Officer Lovejoy then directly ordered Fisher, who was still lying on the floor, to line up against the wall. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 67-68.) He picked Fisher up and pushed him toward the wall. (*Id.* ¶ 68.) Officer Lovejoy did notice at this point that Fisher had been stabbed. (*Id.* ¶ 70.) Fisher went to the wall and lined up between two inmates, close enough that their forearms touched. (*Id.* ¶ 74.) The inmates with whom he was lined up eventually attacked him. (*Id.* ¶¶ 77-79.) While Officer Lovejoy's lack of sympathy for Fisher's condition might be considered insensitive, Fisher does not claim that Officer Lovejoy's rough treatment or the trip to the wall caused any injury to him. It is true that Officer Lovejoy did not separate Fisher from the inmates who eventually attacked him, but nothing in the record suggests that it should have been obvious to Officer Lovejoy that the inmates lined up against the wall were aligned with the inmates who had attacked

9

Fisher earlier. In fact, Fisher himself apparently did not know he would be attacked before he heard the man next to him whisper an expletive. (Def.'s LR 56.1(a)(3) ¶ 47; Pl.'s LR 56.1(b)(3)(B) ¶¶ 74-76.)

In an attempt to minimize the significance of the fact that the inmate who stabbed Fisher the second time was not the same man who stabbed him the first time, Fisher relies upon *Farmer v. Brennan*'s statement that a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." 511 U.S. at 843. This quote is taken far out of context. The plaintiff in *Farmer* complained of a prison policy of placing transsexuals in the general population in spite of the obvious and substantial risk that transsexuals, as a *group*, were more likely to be victims of sexual assault. *Id.* at 828. The *Farmer* Court thus was not referring to decisions made by individual corrections officers in response to a particular prison fight with multiple combatants but to deliberate indifference to system-wide threats which put ascertainable groups of inmates at risk of violence at the hands of the general population. Fisher, by contrast, cannot seriously contend that it was obvious when the inmates lined up against the wall that every single inmate in the CJ unit was likely to attack Fisher with a knife.

Few cases deal with a charge of deliberate indifference in the context of a prison fight which has been interrupted but subsequently resumes. In *Peate v. McCann*, the Court of Appeals reversed a grant of summary judgment to a prison guard defending against a claim of deliberate indifference in a similar situation. 294 F.3d 879, 885 (7th Cir. 2002). Peate had been attacked by a fellow inmate who was armed with a laundry

bag full of rocks, bricks, and cement. *Id.* at 881. Defendant McCann had intervened in the fight, but the inmate presently regained his weapon and attacked a second time, resulting in serious injury to the plaintiff. *Id.* That case is distinguishable from the one before the Court, however, because the plaintiff in *Peate* presented the statements of more than one witness who claimed the defendant actually voluntarily gave the laundry bag back to the plaintiff's assailant. *Id.* at 883. Because the facts were to be viewed in the light most favorable to the plaintiff, there was sufficient evidence in that case to raise a genuine issue of material fact as to whether defendant had acted with deliberate indifference to the plaintiff's safety. *Id.* at 883-84. In this case, the record is devoid of evidence suggesting that Officer Lovejoy in any way actively enabled Fisher's attackers in the second fight to stab him. While Officer Lovejoy did see the shank presumably used in the first attack on the floor, (Pl.'s LR 56.1(b)(3)(B) ¶ 72), even Fisher did not know the inmate next to him on the wall had another knife, (Def.'s LR 56.1(a)(3) ¶ 47), so it hardly could have been obvious to Officer Lovejoy as he directed Fisher to the wall.

A reasonable fact-finder could not infer from this record that Officer Lovejoy was aware of and disregarded a substantial risk to Fisher's safety when he directed him to line up against the wall with the inmates who eventually attacked him. Accordingly, the Court grants defendant's motion for summary judgment as to this conduct.

### III. The Second Fight

After Officer Lovejoy ordered Fisher to the wall, he walked to another part of the dayroom with a few other officers. (Def.'s LR 56.1(a)(3) ¶ 47; Pl.'s LR 56.1(b)(3)(B) ¶ 69.) At the moment he was attacked for the second time, Fisher was not aware of Officer

11

Lovejoy's whereabouts. (Def.'s LR 56.1(a)(3) ¶ 50.) While Fisher was being stabbed, a group of officers rushed the men attacking him. (*Id.* ¶ 56.) It was at this point that Fisher saw Officer Lovejoy standing by the door of the dayroom. (Pl.'s LR 56.1(b)(3)(B) ¶ 80.)

There is nothing in the record to support a reasonable inference that Officer Lovejoy was in a better position to assist Fisher than the four or five officers who collectively rushed the attackers. There is no evidence in the record that Officer Lovejoy was even aware of the second attack. Even if Officer Lovejoy had been aware of the risk to Fisher and in a position to intervene, the failure to follow such a course of action, which would have put Officer Lovejoy's own safety at risk if he had not had the assistance of the officers who eventually responded, cannot be reasonably characterized as an exhibition of deliberate indifference that would support Fisher's claim. Further, there is no evidence in the record to show that Fisher knew or had reason to believe that there was an insufficient number of officers present to deal with the detainees against the wall.

The record is devoid of any evidence that Officer Lovejoy's conduct occurred with the requisite knowledge to support plaintiff's theory of deliberate indifference. Based on the facts presented by Fisher, a jury would have to engage in pure speculation as to whether Defendant knew Fisher was being attacked a second time or whether Defendant was deliberately indifferent to the risk to Fisher's safety that such an attack posed.

The Court deeply sympathizes with Fisher, who must have experienced extreme fear and anguish as a result of the attacks by other pretrial detainees on that fateful day.

However, based on the record before the Court, no genuine issue of material fact exists which can prevent the grant of Officer Lovejoy's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Officer Lovejoy's motion for summary judgment [doc. no. 36-1]. This case is hereby terminated.

SO ORDERED                        ENTERED: 9/27/04

HON. RONALD A. GUZMAN
United States Judge